UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wendy Magee,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>Nike Retail Services, Inc., et al.,<br><br>　　　　Defendants. | Case No. 2:20-cv-02618-VAP-GJSx<br><br>**Order GRANTING Defendant's Motion for Summary Judgment (Dkt. 23)** |

Before the Court is Defendant Nike Retail Services, Inc.'s ("Defendant" or "Nike") Motion for Summary Judgment or in the alternative Motion for Summary Adjudication. (Dkt. 23, "Motion"). After considering all the papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court GRANTS the Motion.

## I.　　FACTUAL BACKGROUND

Nike filed a statement of undisputed facts, ("Nike SUF", Dkt. 23-1), to which Plaintiff Wendy Magee ("Magee" or "Plaintiff") filed a statement of genuine disputes ("Magee RSUF", Dkt. 26-1). Magee did not file her own set of undisputed facts.[1] Nike filed a response to Magee's statement of

---

[1] Magee attached exhibits to her Opposition. This is improper under this Court's Scheduling Order. (*See* Dkt. 7, at 6 ("If the party opposing the summary judgment motion wishes to include its own set of undisputed facts, it may include them in a second table at the end of its statement of genuine

1

genuine disputes. ("Nike RGD", Dkt. 30-1). Neither party filed evidentiary objections.[2]

To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision. In addition to considering the evidentiary objections raised by the parties, the Court has reviewed independently the admissibility of the evidence that both parties submitted and has not considered evidence that is irrelevant or inadmissible. At the summary judgment stage, a district court should "focus on the admissibility of the [evidence's] contents" and not the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in its admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

---

issues. The opposing party's undisputed facts shall be set forth in the same manner as the moving party's SUF.")). The Court will nevertheless consider these exhibits on this Motion.

[2] Magee attempts to assert legal objections in the statement of genuine issues. This is improper pursuant to the Court's Scheduling Order. These objections are therefore OVERRULED. (*See* Dkt. 26-1, ¶ 34; Dkt. 7, at 5 ("The opposing party shall not set forth legal objections in the statement of genuine issues.")).

### A. Undisputed Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of Defendant's Motion. *See* Local Rule 56-3.[3]

This is an employment and wrongful termination dispute stemming from Magee's conduct when she followed a Black family (the Stallworths), out of a Nike store to determine whether they purchased a basketball. (Nike SUF; Magee RSUF).

Plaintiff began her employment as an assistant coach with Nike on or

---

[3] Magee attempts to create genuine disputes as to various facts without supporting evidence or with evidence that does not contradict the proffered fact. (*See* Dkt. 26-1, ¶¶ 14, 17, 23-24, 34, 36, 39-42, 45). For example, Magee states in several responses that the "supporting evidence relied upon by Defendant does not support the existence of the fact supported." (Dkt. 26-1, ¶ 39). Moreover, Magee's evidence in opposition to Nike's SUF ¶ 14 does not contradict the proffered fact; as explained in further detail below, policies that allowed employees to approach customers suspected of shoplifting before they left the Nike store does not rebut the fact that employees were not allowed to leave the Nike store to follow a customer to determine whether they purchased a product. Such attempts to create genuine issues of material fact are improper and contrary to the Federal Rules of Civil Procedure, the Local Rules for the Central District of California, and this Court's Scheduling Order. (*See* F.R.C.P. 56(e)(2); *See* L.R. 56-3 ("In determining any motion for summary judgment … the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion."); *see* Dkt. 7 at 5 ("The party opposing the summary judgment shall … identify[] those facts that are in dispute … citing the evidence supporting the dispute."); *see also id.* ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed for purposes of the motion.")). The Court therefore deems these facts undisputed for purposes of the Motion.

about November 23, 2011. (Nike SUF, ¶¶ 1, 2). During the course of her employment, as part of loss prevention, Plaintiff was reminded, *inter alia*, not to exit a Nike store to follow a consumer suspected of shoplifting to determine whether that person had paid for the Nike merchandise. (*Id.*, ¶¶ 14, 18-19). Plaintiff also received hand-written notice of Nike's policies and received "External Theft" training where the policy was reiterated. (*Id.*, ¶¶ 3-4, 16-20). In or about September 2017, Plaintiff became the Head Coach of the Nike Santa Monica store. (*Id.*, ¶ 15).

On the evening of July 5, 2019, the Stallworths shopped at the Nike Santa Monica store. (*Id.*, ¶ 21). After shopping, the family left the store with a youth basketball they had purchased. (*Id.*, ¶ 22). Plaintiff was notified that the Stallworths had not paid for the basketball, and she left the store and followed the Stallworths down 3rd Street Promenade. (*Id.*, ¶¶ 23-25)[4]. Once Plaintiff caught up with the family, she asked the Stallworths to produce a receipt showing proof of purchase for the basketball. (*Id.*) When the Stallworths refused to produce a receipt, Plaintiff approached the Santa Monica Police Department ("SMPD") for assistance. (*Id.*, ¶ 27). The Stallworths eventually showed their receipt to the SMPD and then requested a full refund for the basketball from Nike. (*Id.*, ¶¶ 26-29).

---

[4] Plaintiff attempts to dispute the fact that she followed the Stallworths down 3rd Street Promenade by stating she first spoke to the Stallworths outside the door of the Nike store and just again before they reached the street. These facts do not controvert the evidence provided by Nike consisting of Plaintiff's own deposition testimony admitting that she left the Nike store and followed the Stallworths until she caught up with them on 3rd Street Promenade. (Dkt. 23-3, Ex. B, at 190:21-25, 211:4-10; 212:13-20).

After the incident, Rianna Lopez, Nike's District Manager for Los Angeles, made the decision to discharge Plaintiff because she had violated Nike's loss prevention polices. (*Id.*, ¶¶ 30-38). Nike has discharged every other employee of whom it is aware who left a Nike store to follow a consumer suspected of shoplifting to determine whether that person had paid for the Nike merchandise. (*Id.*, ¶ 39). The other Nike employees who were discharged for these reasons have been Black, Latinx, and White, and have held positions as Head Coach and Assistant Head Coach, among others. (*Id.*, ¶¶ 40, 41). Plaintiff testified in her deposition that she is unaware of any systematic practice at Nike of discriminating against White employees. (*Id.*, ¶ 43).

On July 5, 2019, Nike issued a statement to the media regarding the incident, stating, "[w]e are taking the recent situation at our Santa Monica store very seriously, and we are currently investigating the facts. We have reached out to the family to express our deepest apologies, and we will continue to work with our teams to ensure we deliver on our expectations for consumer experiences." (*Id.*, ¶ 46). Following the incident, Nike also told Plaintiff not to come to work at the Nike store, hired a private security company that posted a guard at the front door of the store, alerted mall security and requested increased patrolling around the store, alerted the SMPD of threats made after the incident, and employed "hotlines" so that employees who received hostile calls in the Nike store could refer those calls to the hotlines. (*Id.*, ¶¶ 50-52, 54).

## II. PROCEDURAL BACKGROUND

On February 13, 2020, Plaintiff filed the instant action against Defendant in the Superior Court for the County of Los Angeles, Santa Monica Courthouse. (Dkt. 1-3).[5] Plaintiff alleges claims for Reverse Racial Discrimination, Wrongful Termination, Intentional Infliction of Emotional Distress ("IIED"), and Negligence. (*Id.*) On March 19, 2020, Defendant removed the action to this Court on the basis of diversity jurisdiction. (Dkt. 1).

On April 23, 2021, Defendant filed the instant Motion. (Dkt. 23). Plaintiff filed an Opposition on May 4, 2021. (Dkt. 27). Defendant filed a Reply on May 10, 2021. (Dkt. 30).

## III. LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving

---

[5] Thereafter, the Stallworths sued Nike and Magee; that case is pending before this Court. (*See Joel Stallworth et al v. Nike Retail Services, Inc. et al.*, No. 2:20-cv-05985-VAP-GJSx, Dkt. 1).

party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (*reconciling Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV. DISCUSSION

### A. "Reverse" Racial Discrimination

Defendant first argues that it is entitled to summary judgment on Plaintiff's Reverse Racial Discrimination Claim because, *inter alia*, Defendant discharged Plaintiff for legitimate, non-discriminatory reasons.

"When an employer moves for summary judgment on a claim for violation of FEHA, 'the employer, as the moving party, has the initial burden

to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors." *Rozga v. 7-Eleven, Inc.*, No. CV 18-7451 SJO (MRWx), 2019 WL 6879750, at *5 (C.D. Cal. Sept. 17, 2019) (citing *Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 861 (2014)). "If the employer meets its initial burden, the burden shifts to the employee to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual." (*Id.*) (citing *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1171 (C.D. Cal. Feb. 8, 2013)). "It is not sufficient for an employee to[] speculate as to discriminatory motive. Rather, it is incumbent upon the employee to produce substantial evidence demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Id.*) (internal quotation marks and citations omitted).

Here, Nike argues that it has satisfied its initial burden by showing both that Plaintiff's prima facie case is lacking and that it terminated Plaintiff's employment for non-discriminatory reasons. The Court agrees.

According to Nike, Magee was discharged for violating Nike's loss prevention policies when she followed the Stallworths outside the Nike store to determine whether they paid for a basketball. This is a legitimate reason that is facially unrelated to a prohibited bias. *Serri*, 226 Cal. App. 4th at 861 ("Examples of legitimate reasons are a failure to meet performance standards … or a loss of confidence in an employee.").

Magee does not dispute that Nike had this policy in place or that she violated it. (Nike SUF, ¶¶ 13-14, 16-25). Indeed, Nike has provided substantial evidence, which Plaintiff does not dispute, that Plaintiff was reminded while working at Nike that employees would be in violation of Nike's loss prevention policies when, *inter alia*, "chasing a subject, making accusations, [and] exiting the building to follow a shoplifting subject…"). (*See* Nike SUF, ¶ 13-14). Notably, Plaintiff admits in her own declaration that she was aware of Nike's policy of preventing employees from "accusing a customer of shoplifting or chasing or apprehending a customer suspected of shoplifting." (Dkt. 26-2, ¶ 4). Plaintiff also does not dispute that she completed Nike's "External Theft" training in 2018, which reiterated that employees were to "never accuse anyone of shoplifting or try to chase or detain a suspected shoplifter." (Nike SUF, ¶¶ 18-19).

Plaintiff attempts to create genuine issues of fact by pointing to other policies and situations where employees were allegedly allowed to approach a customer before leaving the Nike store regarding shoplifting. For example, Plaintiff notes that if EAS tags alarmed when customers were leaving the store, Nike required that employees to follow up. (Dkt. 26-2, ¶ 6). Plaintiff also notes that employees were sometimes allowed to use prevention statements with customers who "appeared to have an intention to walk out of the store without paying for product." (*Id.*, ¶ 11). According to Plaintiff, "prevention statements" were "non-accusatory statement[s] made to customer who appeared to have an intention to walk out of the store without paying for product, which would let the customer know that he/she was being observed." (Dkt. 26-2).

Contrary to Plaintiff's arguments, these additional policies do not change the analysis. Plaintiff was not discharged for following up on an EAS tag alarm or for using a prevention statement to a customer before they left a Nike store. Nike discharged Plaintiff for "exit[ing] the store to follow a consumer and demand[ing] to see a receipt as proof of purchase." (Nike SUF, ¶ 35).

These policies do not contravene the evidence of Nike's policy prohibiting employees from following a customer outside the Nike store to determine whether they had purchased a product. Plaintiff does not claim that either one of the policies allowed her to follow a customer out of the store. Plaintiff does not argue that Nike had any policies that allowed employees to leave a store to follow a customer regarding shoplifting. Plaintiff also fails to dispute the evidence that she was reminded in writing on more than one occasion not to follow or chase a customer suspected of shoplifting outside the store. Indeed, the "prevention statement" policy that Plaintiff relies on refers to customers who "appeared to have an intention to walk out of the store without paying for product", and not to a customer who had already left the store. Here, Plaintiff testified that she left the Nike store and followed the Stallworths down 3rd Street Promenade to ask for proof of purchase. Accordingly, even though Plaintiff disputes Nike's evidence, she has failed to contravene it.

Although not clearly articulated, Magee appears to be arguing that Nike should not have discharged her for violating its policies but should instead have given Plaintiff a warning or some other corrective action. (Dkt.

26, at 12). This argument lacks merit.

Although Nike had the authority to discharge Plaintiff immediately for violating company polices (SUF, ¶¶ 16, 30-32), Nike's reason for terminating Plaintiff's employment need not be wise or correct; it must be non-discriminatory. *Day*, 930 F. Supp. 2d at 1169 ("Under FEHA, defendant's true reasons, 'if nondiscriminatory, ... need not necessarily have been wise or correct ... While the objective soundness of an employer's proffered reasons supports their credibility, the ultimate issue is simply whether the employer acted with a motive to discriminate illegally.") (citations omitted). Accordingly, Nike has satisfied its burden of showing that Plaintiff's termination was "based upon legitimate, nondiscriminatory factors." *Serri*, 226 Cal. App. 4th at 830.

Nike also makes a showing that Plaintiff has failed to make a prima facie case, that is, a showing that: (1) the employee's membership in a classification protected by the statute; (2) discriminatory animus on the part of the employer toward members of that classification; (3) an action by the employer adverse to the employee's interests; (4) a causal link between the discriminatory animus and the adverse action; (5) damage to the employee; and (6) a causal link between the adverse action and the damage. *Mamou v. Trendwest Resorts*, Inc., 165 Cal. App. 4th 686, 713 (2008).

Critically, Plaintiff fails to provide any evidence to show Nike's discriminatory animus towards its White employees or a causal link between Magee's status as a White person and her discharge. Indeed, Magee has testified that she is unaware of any systematic practice by Nike of

discriminating against White employees. (Nike SUF, ¶ 43). Nike has also provided uncontroverted evidence that it has discharged White, Black, and Latinx employees in similar roles as Magee for following a consumer suspected of shoplifting outside of the store to determine whether that person paid for Nike merchandise. (Nike SUF, ¶ 39-42). Notably, Nike has "terminated every other employee of whom it is aware who exited a NIKE store to follow a consumer suspected of shoplifting to determine whether that person had paid for the NIKE merchandise." (*Id.*, ¶ 39). Magee's only argument is that her discharge must have been racially motivated because she is White and the Stallworths are Black. This argument is illogical and unsupported by any facts. The Court thus finds that Plaintiff's prima facie case is insufficient.

Given that Nike has satisfied its burden, the burden shifts to Plaintiff, to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual." *Serri,* 226 Cal. App. 4th at 862. Again, Plaintiff fails to satisfy her burden. As noted above, Plaintiff fails to provide any evidence to support the existence of Nike's racial animus towards its White employees or a causal connection between Plaintiff's race and her discharge. Plaintiff has therefore failed to satisfy this burden and Defendant is entitled to summary judgment on this claim. (*See id.* at 861-62) ("the great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*862 Guz, supra, 24 Cal.4th at p. 361, 100 Cal.Rptr.2d 352,

8 P.3d 1089, fn. omitted.) It is not sufficient for an employee to … speculate as to discriminatory motive.").

The Court therefore GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Reverse Discrimination Claim.

**B.     Wrongful Termination**

Plaintiff's claim for Wrongful Termination in Violation of Public Policy is derivative of her claims for retaliation and discrimination. Thus, it also fails. *Rozga*, 2019 WL 6879750, at *10 (citations omitted).

**C.     Intentional Infliction of Emotional Distress**

Defendant next argues that Plaintiff's claim for IIED Claim fails. The Court agrees.

The elements of an intentional infliction of emotion distress claim are "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (*quoting Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 155 n.7, 233 Cal. Rptr. 308, 729 P.2d 743 (1987)).

California courts have recognized three general categories of outrageous conduct: "if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is

susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Cole*, 43 Cal. 3d at 155 n.7. Whether conduct can reasonably be found to be outrageous is initially a question of law for the Court. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534, 61 Cal. Rptr. 3d 304 (Ct. App. 2007). "[I]f reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." (*Id.*)

Here, Magee claims that Nike caused her severe emotional distress by, *inter alia*, failing to protect her from public mistreatment. The Court disagrees. As a threshold matter it is unclear what Plaintiff claims is the "outrageous conduct" at issue. Plaintiff argues at length in her papers about Nike's duty to protect Plaintiff from the public according to its own policies. Nevertheless, Plaintiff fails to provide any authority stating that Nike breached a duty to maintain a safe workplace by refraining from commenting to the media on Plaintiff's behalf.

Moreover, even if Plaintiff was offended by Nike's refusal to offer public support her actions, not all offensive behavior amounts to the level of outrageousness required to support an IIED claim. Put differently, Magee's complaints do not go beyond "an average case of … mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *James F. Jackson v. Local 705, Int'l Bhd. of Teamsters*, AFL-CIO, No. 95 C 7510, 2002 WL 460841, at *16 (N.D. Ill. Mar. 26, 2002). Accordingly, the Court GRANTS Nike's Motion for Summary Judgment as to this Claim.

## D.    Negligence

Defendant claims that Plaintiff's Negligence claim fails for similar reasons.  The Court agrees.

In order to support a claim of negligence a plaintiff must prove: (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach was the proximate or legal cause of the resulting injury. *Ladd v. Cty. of San Mateo*, 12 Cal.4th 913, 917 (1996). "[T]he existence of a duty is a question of law for the court." *Ky. Fried Chicken of Cal. v. Superior Court*, 14 Cal.4th 814, 819 (1997). "Breach is the failure to meet the standard of care." *Coyle v. Historic Mission Inn Corp.*, 24 Cal. App. 5th 627, 643 (2018).

As a threshold matter, Plaintiff fails to provide any authority stating Nike had a duty to make a public statement on her behalf because of its internal media policies.  Plaintiff also fails to provide any authority stating Nike had a duty to protect Plaintiff from harassment outside of the workplace; Plaintiff complains of alleged harassment that was made on social media, not at the workplace.

The parties do not dispute whether Nike had a duty to maintain a safe workplace free of discrimination and harassment.  The key dispute turns on whether Nike breached this duty.

According to Nike, Plaintiff fails to allege adequately that Nike breached the standard of care to provide a workplace free of discrimination

and harassment. In support of this argument, Nike provides uncontroverted evidence of the steps it took to protect Plaintiff and other Nike employees after Nike received threatening calls following the incident. (*See* Dkt. 23, at 18). Specifically, *inter alia*, Nike requested heightened mall security, hired a private security company to guard the front door of the store, asked Plaintiff to refrain from coming into the store after the incident, and notified the SMPD of the threats. (Nike SUF, ¶¶ 49-52). Nike also utilized "hotlines" so that employees who received hostile calls in the Nike Store could refer those calls to the hotlines. (*Id.*, ¶ 54). The burden thus shifts to Plaintiff to demonstrate the existence of a triable issue of material fact on whether Nike's actions fell below the standard of care. *Coyle*, 24 Cal. App. 5th at 643. Plaintiff has failed to do so.

Plaintiff fails to provide any facts to support her conclusory argument that Nike breached its duty of care. Plaintiff's sole argument is that Nike did not personally protect her from harassment that occurred outside of the workplace on social media or otherwise. As noted above, Nike did not have such duty. Moreover, Plaintiff does not dispute that Nike took steps after receiving threats to protect employees in the workplace. Plaintiff also does not dispute that Nike told Plaintiff not to report to work following the incident in response to the threats made towards Plaintiff. Absent any evidence contravening these facts, the Court finds that Nike did not breach its duty to provide a workplace free of discrimination and harassment.

The Court thus GRANTS Nike's Motion for Summary judgment on Plaintiff's Negligence claim.

### E. Punitive Damages

Plaintiff claims she is entitled to recover punitive damages under her claims for wrongful termination, intentional infliction of emotional distress, and negligence. (Dkt. 1-3, ¶¶ 40, 45, 49). As Plaintiff's underlying claims fail, her claim for punitive damages also fails. *Tipton v. Airport Terminal Servs.*, No. 18-09503-AB (JEMx), 2020 U.S. Dist. LEXIS 131828, at *35 (C.D. Cal. Mar. 31, 2020).

### V. CONCLUSION

The Court therefore GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: 6/2/21

Virginia A. Phillips
United States District Judge